IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ernest B. Gilbert, | ) | Civil Action No. 8:13-cv-01561-JFA-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On June 18, 2010, Plaintiff filed a Title II application for DIB [R. 151–1502] and a Title XVI application for SSI [R. 145–150], alleging an onset of disability date of May 25, 2010. These claims were denied initially November 24, 2010 [R. 50–51], and on

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

reconsideration on March 18, 2011 [R. 62–65 ], by the Social Security Administration ("the Administration").  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and on March 6, 2012, ALJ Richard L. Vogel conducted a de novo hearing on Plaintiff's claims.  [R. 29–49.]

The ALJ issued a decision on March 23, 2012, finding that Plaintiff was not disabled. [R. 9–23.]  At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2015 and had not engaged in substantial gainful activity since May 25, 2010, the alleged onset date.  [R. 14, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: status post right knee replacement, degenerative joint disease of the left knee, pulmonary edema and obesity.  [R. 14, Finding 3.]  The ALJ also found Plaintiff had these non-severe impairments: mild coronary artery disease, hypertension, bursitis of the right shoulder and cervical degenerative disc disease with radiculopathy, left elbow degenerative joint disease, bilateral carpal tunnel syndrome, acute renal failure and gastroesophageal reflux disease. [R. 14–16.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 20, Finding 4.]  The ALJ specifically considered Social Security Ruling ("SSR") 02-01 and Listings 1.02 and 3.00.  [R. 16.]

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following finding with respect to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. However, the claimant can never kneel or crawl, and he can only occasionally crouch and stoop.

[R. 16–17, Finding 5.]  Based on this RFC finding, at Step 4, the ALJ determined Plaintiff was unable to perform any past relevant work [R. 22, Finding 6], but considering the Plaintiff's's age, education, work experience, and RFC, the ALJ decided there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform [R. 22, Finding 10.]  On this basis, the ALJ found Plaintiff had not been under a disability, as defined by the Act, from May 25, 2010, through the date of the decision.  [R. 23, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 7–8], but the Council declined review [R. 1–6].  Plaintiff filed this action for judicial review on June 7, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision should be vacated and remanded for further proceedings because:

1.  the ALJ erred in finding that Plaintiff's cervical degenerative disc disease and bilateral carpal tunnel syndrome were non-severe [Doc. 20 at 10–12];

2.    the ALJ failed make a proper listing or combination of impairments analysis [*id.* at 12–16];

3.    the ALJ erred in evaluating Plaintiff's credibility [*id.* at 17–19]; and,

4.    the ALJ failed to properly evaluate the opinions of treating and examining physicians [*id.* at 19–22].

The Commissioner, on the other hand, contends the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence and is not otherwise in error.  [Doc. 22 at 29.]  Specifically, the Commissioner contends:

1.    the ALJ relied on substantial evidence in finding certain of Plaintiff's impairments non-severe, and, notwithstanding his non-severity finding, the ALJ accounted for these impairments in his RFC finding [*id.* at 10–13];

2.    the ALJ properly evaluated Plaintiff's impairments at Step 3  [*id.* at 13–19];

3.    the ALJ properly evaluated Plaintiff's credibility [*id.* at 19–24]; and,

4.    the ALJ properly weighed the medical opinion evidence  [*id.* at 24–28].

Consequently, the Commissioner contends the decision of the Commissioner should be affirmed.  [*Id.* at 29.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

4

(S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts

to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under

6

sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

**B.     *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined

10

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's RFC[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the RFC to do her past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]RFC is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

11

E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's

14

opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain,

the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723

(4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant

has produced medical evidence of a 'medically determinable impairment which could

reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged

by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds

that the claimant has produced such evidence, the ALJ must then determine, as a matter

of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."

*Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

Circuit has rejected a rule which would require the claimant to demonstrate objective

evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and

ordered the Commissioner to promulgate and distribute to all administrative law judges

within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).   The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Impairment Rating

Plaintiff argues the ALJ made a reversible error when the ALJ failed to find Plaintiff's impairments of cervical degenerative disc disease and bilateral carpal tunnel syndrome were severe impairments.   [Doc. 20 at 10–12].  The Commissioner contends Plaintiff's argument fails because the ALJ accounted for these impairments in his RFC finding. [Doc. 22 at 10.]

18

An erroneous finding that a claimant's impairment is not severe at Step 2 is harmless if the ALJ finds another severe impairment to proceed beyond Step 2 in the sequential process and considers the limitations imposed by the non-severe impairment in his RFC assessment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that the ALJ's failure to label an impairment as severe at Step 2 was harmless when the ALJ discussed its limitations at Step 4); *see also Groberg v. Astrue*, No. 09–4203, 2011 WL 538870, at *2 (10th Cir. Feb.17, 2011) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ ... finds another impairment is severe and proceeds to the remaining steps of the evaluation."). Because the ALJ found severe impairments and later considered Plaintiff's cervical degenerative disc disease and bilateral carpal tunnel syndrome impairments in the remaining steps of the sequential process, any error in labeling the impairments non-severe versus severe is harmless error. Accordingly, the Court declines to remand on this basis.

**Listing/Combination of Impairment Analysis**

Plaintiff alleges numerous errors in the ALJ's listing and combination of impairments analysis. Among the many errors the Plaintiff contends the ALJ made in his analysis is that Plaintiff may have met the "B" criteria of Listing 1.02 due to his "cervical radiculopathy, bilateral carpal tunnel syndrome, gout, right shoulder bursitis, and left elbow degenerative joint disease, which resulted in an inability to perform fine and gross movements effectively," but this listing analysis was never performed. [Doc. 20 at 15.] Plaintiff contends the ALJ was required to both consider and adequately explain his evaluation of the combined effects of Plaintiff's impairments but failed to comply with this requirement.

19

[*Id.* at 16.]   The Commissioner argues that, contrary to Plaintiff's arguments, the ALJ's decision reflects that he considered Plaintiff's impairments under Listing 1.02B [Doc. 22 at 16] and that Plaintiff failed to meet his burden to "present medical findings equal in severity to all the criteria for the one most similar listed impairment" [*id.* at 18].

The statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989); *Rabon v. Astrue*, 4:08–3442–GRA, 2010 WL 923857 (D.S.C. Mar.9, 2010) (requiring remand when ALJ did not consider severe and nonsevere impairments in combination).   Even if the claimant's impairment or impairments in and of themselves are not "listed impairments," the Commissioner must also "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

The Commissioner's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of her review, but is to continue "throughout the disability process."  20 C.F.R. § 404.1523.  20 C.F.R. § 404.1523 provides as follows:

> Multiple Impairments. In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we

will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (*see* § 404.1520).

*Id.; see also Fleming v. Barnhart*, 284 F.Supp.2d 256, 270 (D.Md.2003) ("The ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process.")

### *Listing Analysis*

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986)(stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"). "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." *Beckman v. Apfel*, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) (*quoting Cook*, 783 F.2d at 1172). While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 404.1527(f)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing, id. § 404.1527(e)(2).

Listing 1.02 *Major dysfunction of a joint(s) (due to any cause)* is directed to impairments

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B.    Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

In performing the Listing analysis under Listing 1.02A, the ALJ explained:

> The evidence of record fails to indicate that the claimant's bilateral knee pain has resulted in an inability to ambulate effectively. The evidence indicates that the claimant is capable of sustaining a reasonable walking pace over a sufficient distance in order to carry out activities of daily living and that he has the ability to travel without companion assistance to and from a place of employment. Accordingly, the claimant's status post right knee replacement and degenerative joint disease of the left knee do not meet or medically equal the severity of Listing 1.02.

[R. 16.] Plaintiff directs the Courts attention to evidence of record that the ALJ "misstated or ignored" evidence supporting a finding that Plaintiff's impairments resulted in an inability to ambulate [Doc. 20 at 13], however, the ALJ noted Plaintiff's testimony that he could walk only 300 yards before having to rest and, while the objective evidence did not support Plaintiff's limitation, the ALJ nonetheless considered this allegation in limiting the amount Plaintiff could stand and walk in an 8-hour day. [R. 19.] Additionally, the ALJ addressed the

opinions of Plaintiff's treating and examining physicians who noted problems with Plaintiff's gait, but explained his reasons for declining to adopt their opinions regarding Plaintiff's limitations in his ability to ambulate.  For example,"[w]hile the medical record reflects that the claimant sometimes ambulated with an antalgic gait, there is no documentation to support Dr. DeTorre's opinion that the claimant is completely incapable of ambulating for even 1 hour in an 8-hour day." [R. 20]; and "[i]n September 2010, Dr. Holman stated that the claimant could perform only limited weight bearing with his right knee. However, this opinion was rendered less than one month after the claimant's right knee arthroplasty and therefore appears to be only a temporary, post-operative restriction." [R. 21.] While Plaintiff cites to evidence of record showing Plaintiff had difficulty walking at times, the Court does not find that the ALJ ignored this evidence; the ALJ merely weighed the evidence and came to a contrary conclusion.

Further, while not expressly performing an analysis under Listing 1.02B, the ALJ does discuss Plaintiff's impairments related to the use of his hands in the RFC analysis. [*See*, R. 17–22.]  The ALJ specifically notes that "in November 2010, the consultative examiner noted the claimant exhibited full range of motion of the bilateral hands and wrists, no joint deformity or swelling, and normal gross and fine manipulations bilaterally." [R. 19.] The ALJ also found that, while the July 2010 opinion of Dr. DeTorre "opined the claimant can never bend, stoop, grasp, reach or perform fine manipulations with the right hand",  this opinion was "dated prior to Plaintiff's right carpal tunnel release, and post-operative treatment notes reflect improvement of the claimant's right hand/wrist."   [R. 20.] Additionally, in November 2010, Dr. Rittenberg noted that "claimant exhibited full range of

23

motion of the bilateral hands, with the ability to perform gross and fine manipulations normally." [R. 21.]  Other than these references to Plaintiff's ability to perform gross and fine manipulations, which weigh against a finding that Plaintiff could meet Listing 1.02B, Plaintiff has failed to direct the Court to any evidence of record, not considered by the ALJ, which would require the Court to revisit the listing analysis under Listing 1.02B.

With respect to Plaintiff's obesity, while the ALJ found Plaintiff's obesity was not disabling under SSR 02-01p, the ALJ continued to address the effect of Plaintiff's obesity on his ability to function throughout the evaluation process, and not just at Step 1.  The ALJ noted during the RFC analysis that the Plaintiff had "not reported any functional limitations secondary to his obesity" and that "[t]reatment notes reveal that despite his obesity, the claimant can move about generally well and sustain consistent function." [R. 19.]  The ALJ concluded that

> Objective examination has revealed that the claimant has good muscle tone despite his increased body mass, and the medical evidence fails to indicate that the claimant's obesity has lead to or complicated chronic diseases ofthe cardiovascular, respiratory or musculoskeletal body systems. While there is some indication that the claimant's right knee arthroplasty procedure was initially complicated by his obesity, the record indicated that this surgery was successful. (Exhibit 21F/154). Although the claimant's obesity may aggravate his ability to perform work-related activities, it does not impose greater limitations than those inherent in the residual functional capacity set forth above.

[R. 19.]

Plaintiff also argues that the ALJ failed to consider Plaintiff's limitations in his ability to fully use his hands and fingers in considering the entire range of jobs available to Plaintiff.  [Doc. 20 at 16.]  As explained above, the ALJ failed to find any limitations in

24

Plaintiff's ability to perform gross and fine manipulations.  Thus, the ALJ had no duty to take this limitation into account at Steps 4 or 5.  In sum, it appears Plaintiff would like this Court to re-weigh the evidence considered by the ALJ and/or require the ALJ to re-weigh the evidence; however, the Court finds the ALJ has already met his duty to weigh the evidence and explain his evaluation of the same.  Accordingly, the Court declines to remand on this basis.

**Credibility Analysis**

Plaintiff argues that the ALJ "approached his credibility determination with the intent of picking out whatever parts of the record he could cite to support a pre-determined finding of non-disability" and contends that "[t]here is no explanation as to how [Plaintiff's] few and limited daily activities related to an ability to work full-time." [Doc. 20 at 19.]  The Commissioner, on the other hand, contends the "ALJ did not find, as Plaintiff alleges...that his daily activities alone established his ability to work on a full-time basis; rather, the ALJ found that his daily activities belied his allegations of extreme limitations and, combined with the other evidence of record, showed his ability to perform sedentary work." [Doc. 22 at 23.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96–7p, 61 Fed.Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make

clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.; see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a non-exhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C. F.R. § 1529(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### ALJ's Credibility Analysis

In considering Plaintiff's symptoms, the ALJ followed the two-step process of first determining whether there is an underlying, medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms and, second, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. [R. 17–22.]   After careful consideration of the evidence, the ALJ concluded that "the

26

claimant's medically determinable impairments could reasonably be expected to cause

some of the alleged symptoms.  [R. 20.] The ALJ explained as follows:

> At the hearing, the claimant testified that he experiences ongoing right knee pain despite his August 2010 right knee replacement.  He reported that he experiences right knee stiffness if he sits, stand or lies down for extended periods.  The claimant testified that his doctors have recommended surgery on his left knee but he cannot afford surgery. He stated he can walk only short distances due to bilateral knee pain.  He reported his doctor prescribed him a walker but that he only uses a cane because he had difficulty using the walker when getting in and out of the car. He maintained he cannot stand without the cane due to knee instability.

> The claimant reported he experiences swelling and cramping of his bilateral hands, which limits his ability to button shirts and use his hands. He reported he takes blood thinners for his pulmonary emboli. He stated he sometimes experiences lightheadedness, nausea and sleepiness from his prescribed medications.

> The claimant testified he drives only sporadically and does not drive after he has taken his medications.  He maintained that he has difficulty kneeling and cannot crawl, crouch or stoop. The claimant testified that he currently weighs 301 pounds. He reported he generally sits around his house or visits his grandmother, who lives next door. He stated he also enjoys writing.

> While the claimant has received medical treatment since his alleged onset date, the medical evidence of record does not indicate that his symptoms are as limiting as he has alleged. Specifically, while the claimant sought treatment for bilateral knee pain in May 2010, the examining physician noted the claimant exhibited decreased range of motion of the right knee but normal range of motion of the left knee. The physician also noted the claimant ambulated with a normal gait. (Exhibit 3F).  June 2010 x-rays of the bilateral knees showed moderate osteoarthritis but no acute findings. (Exhibit 8F). The record reflects that the claimant underwent right total knee arthroplasty in August 2010. (Exhibit 21F/154). A post-operative x-ray revealed no gross complications. (Exhibit 21F/175). In September 2010, the claimant presented to Colleton Medical Center with reports of right knee pain. The examining physician noted he exhibited moderate tenderness and swelling, limited range of motion and a limping gait but that his lower extremity examination was otherwise negative, with no abnormalities of his right lower extremity. (Exhibits 13F and 21F/64).

Additionally, a follow-up examination in September 2010, the claimant's orthopedic surgeon, Jeffery Holman, M.D., noted the claimant's right knee was healing nicely and that alignment was satisfactory. He noted the claimant's x-rays were satisfactory, with only a slight extension of the femoral implant but was otherwise unremarkable. (Exhibit 14F). Notably, at his November 2010 consultative examination, the claimant reported some improvement of his right knee pain with surgery. Charles Rittenberg, M.D., noted the claimant ambulated with a slow and antalgic gait favoring his left leg and had difficulty squatting and rising. Dr. Rittenberg noted the claimant exhibited decreased flexion of the left and right knees (100/150 and 70/150, respectively) but that he demonstrated normal extension of the knees bilaterally. However, Dr. Rittenberg noted the claimant exhibited full muscle strength of the lower extremities, with no cyanosis, clubbing or bilateral lower extremity edema. (Exhibit 16F). The claimant reported bilateral knee pain stemming from a fall in June 2011.  An x-ray of the left knee revealed some degenerative changes, but no evidence of fracture, dislocation or effusion, and an x-ray of the right knee showed no acute process. While he exhibited some moderate tenderness and limited range of motion of the knees at that time, follow-up treatment notes do not document any significant abnormalities. In fact, in September and November 2011, the examiners noted the claimant exhibited normal range of motion of the lower extremities with no edema. (Exhibit 24F).

In terms of his pulmonary edema, September 2010 medical records reflect that the claimant was assessed with a post-operative pulmonary emboli after his right knee replacement, resulting in chest pain, for which he was prescribed anticoagulation therapy. However, with the exception of the pulmonary emboli, the claimant's September 2010 chest x-ray showed no other significant findings. (Exhibit 21F). In October 2010, the claimant sought treatment for chest pain, but work-up was negative, revealing no evidence of pulmonary embolism. The claimant was discharged in stable condition and assessed with chest pain. (Exhibits 15F and 21F).  A November 2010 chest x-ray revealed no acute process or significant change. (Exhibit 17F). The claimant was assessed with Coumadin coagulopathy in November 2010 but his EKG revealed no abnormalities. (Exhibit 21F/17). Additionally, while the claimant reported chest pain in February 2011, his chest x-ray revealed no acute process. (Exhibit 24F). The claimant did not testify to any significant limitations secondary to this condition at the hearing. Although the undersigned has considered the claimant's history of pulmonary edema in restricting him to a reduced range of sedentary work, there is no documentation showing the claimant subsequently had any complications secondary to this condition such that he is precluded from performing the demands of the aforementioned residual functional capacity assessment.

In terms of the claimant's obesity, the medical record reflects that the claimant, who is 6 feet, 3 inches tall, weighed 322 pounds, resulting in a body mass index (BMI) of 40.2. (Exhibit 16F). Individuals with a BMI of 30 or greater are considered obese. The undersigned has evaluated this impairment according to the requirements of Social Security Ruling 02-1 p. According to the National Institutes of Health (NIH), it is individuals of obesity, as defined above, who suffer the greatest risk of developing obesity-related impairments. However, the claimant has not reported any functional limitations secondary to his obesity. Treatment notes reveal that despite his obesity, the claimant can move about generally well and sustain consistent function. Objective examination has revealed that the claimant has good muscle tone despite his increased body mass, and the medical evidence fails to indicate that the claimant's obesity has lead to or complicated chronic diseases of the cardiovascular, respiratory or musculoskeletal body systems. While there is some indication that the claimant's right knee arthroplasty procedure was initially complicated by his obesity, the record indicated that this surgery was successful. (Exhibit 21F/154). Although the claimant's obesity may aggravate his ability to perform work-related activities, it does not impose greater limitations than those inherent in the residual functional capacity set forth above.

[R. 17–19.]

Upon assessing the above evidence, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." [R. 20.] The ALJ further explained that,

In assessing the claimant's credibility, the undersigned notes that while the claimant reported he has difficulty buttoning shirts and using his hands due to hand pain and swelling, he reported he drives and enjoys writing, suggesting his hand pain/swelling is more tolerable than he has alleged. As noted above, the evidence indicates that the claimant's right carpal tunnel release was successful, and in November 2010, the consultative examiner noted the claimant exhibited full range of motion of the bilateral hands and wrists, no joint deformity or swelling, and normal gross and fine manipulations bilaterally. (Exhibit 16F). Accordingly, while the undersigned has limited the amount the claimant can lift and carry, there is no recent

objective evidence corroborating his allegation that his hand pain and swelling limit his ability to perform fine and gross manipulations.

Although the claimant testified he experiences lightheadedness, nausea and sleepiness from his prescribed medications, there is no documentation showing the claimant related these side effects to his treating physicians on a recurring basis, suggesting that they do not occur with significant frequency. The claimant also reported he enjoys writing, suggesting his symptoms of sleepiness are more tolerable than he has alleged.

Additionally, in his Function Report, the claimant reported he rides in a car and/or drives a car twice a day and that he shops for groceries and household items. He stated he enjoys watching television and reading and attends church on a regular basis. The claimant also reported that he cannot lift more than 20 pounds and that he can walk only 300 yards, after which he has to rest for 20 minutes. (Exhibit 4E). While the objective evidence does not support his reports that he can walk only 300 yards, the undersigned has nonetheless considered this allegation in limiting the amount he can stand and walk in an 8-hour day. The undersigned notes that the claimant's allegation that he can lift 20 pounds suggests he can lift and carry 10 pounds frequently and lesser amounts occasionally, and the remainder of the claimant's reports and daily activities suggests that he is capable of performing the aforementioned residual functional capacity assessment.

[R. 19.]

### *Discussion*

A review of the ALJ's decision shows that, while the ALJ cited to Plaintiff's activities of daily living ("ADL") in making his credibility determination, the ALJ did not rely solely on Plaintiff's ADLs in making his findings. Plaintiff argues that the ALJ "goes to some trouble to mine the records for incidental or irrelevant findings which have no particular relation to a genuine, record-as-a-whole effort to determine [Plaintiff's] actual limitations" [Doc. 20 at 17]; however, Plaintiff fails to direct to Court to any evidence of record, not considered by the ALJ, which would dictate an alternate finding. Plaintiff accuses the ALJ of doing exactly what the Plaintiff seeks to have this Court do: pick out notations that support a finding of

disability and ignore those notations to the contrary. However, a reading of the ALJ's decision makes it clear that he considered all of the evidence of record and relied on his cumulative findings (not just on Plaintiff's ADLs) in making his credibility findings. Accordingly, the Court finds no error in the ALJ's credibility findings.

**Treating and Examining Physician Opinions**

Plaintiff argues that the ALJ "failed to cite any justifiable reason" for disregarding, or giving little weight to, the opinions of no less than six treating or examining physicians in order to find that Plaintiff was not disabled. [Doc. 20 at 19.] Plaintiff argues that Dr. DeTorre and Dr. Holman were treating physicians whose opinions were entitled to greater weight under the relevant rules and regulations. [*Id.*] The Commissioner, on the other hand, contends the ALJ properly weighed the medical opinions in the record. [Doc. 22 at 24–28.]

### *ALJ's Decision*

The ALJ states that he considered the medical opinions of Plaintiff's treating physicians, the evaluating physicians, and the state agency medical consultants pursuant to 20 CFR 404.1527 and SSR 06-3p, 96-6p and 96-2p. The ALJ summarized his consideration of the various opinions as follows:

> \*      the ALJ considered the May 2010 opinion of Craig Ward, M.D., that the claimant should not drive, operate machinery, perform strenuous activity or work for two weeks. However, this opinion appears to be based solely on the claimant's reports of bilateral knee pain, as Dr. Ward noted the claimant exhibited normal range of motion of his lower extremities, no edema and a normal gait upon physical examination. (Exhibit 21F/89). Accordingly, because it is not supported by his objective findings on examination and appear to be only temporary restrictions, Dr. Ward's opinions have been given little weight.

31

\* The ALJ considered the July 2010 opinion of Dr. DeTorre that the claimant can lift only 10 pounds, sit for 3 hours at a time but for 0 hours in an 8-hour day, and stand and walk for 0 hours in an 8-hour day. He also opined the claimant can never bend, stoop, grasp, reach or perform fine manipulations with the right hand.  Dr. DeTorre expressed his opinion that the claimant could never return to work. (Exhibit 4F).  However, in his assessment, he indicated that he first examined the claimant in June 2010, only one month prior to his assessment, and his limited contact with the claimant renders his opinions less persuasive. . ..  Dr. DeTorre based his opinions on the claimant's right knee pain and right wrist pain/carpal tunnel syndrome. While there are no objective findings in the record showing that the claimant's bilateral knee pain would limit him to the extent Dr. DeTorre opined, the undersigned has given some deference to Dr. DeTorre's opinions in limiting the claimant to lifting only 10 pounds, never kneeling or crawling and only occasionally crouching and stooping. While the medical record reflects that the claimant sometimes ambulated with an antalgic gait, there is no documentation to support Dr. DeTorre's opinion that the claimant is completely incapable of ambulating for even 1 hour in an 8-hour day. The claimant has reported he can walk 300 yards, suggesting he can stand and/or walk for at least occasionally in an 8-hour workday.  Moreover, in regard to his opinions that the claimant can never grasp, reach or perform fine manipulations with the right hand, the undersigned notes that Dr. DeTorre's assessment is dated prior to the claimant's right carpal tunnel release, and post-operative treatment notes reflect improvement of the claimant's right hand/wrist. In fact, Dr. Rittenberg's November 2010 physical examination reflects that the claimant exhibited normal fine and gross manipulations and full range of motion of the bilateral hands/wrist. (Exhibit 7F).  Accordingly, in light of his relatively limited and infrequent contact with the claimant and the inconsistencies with the objective evidence of record, the undersigned has given Dr. DeTorre's opinions little weight.

\* the ALJ considered the July 2010 treatment notes of Dr. DeTorre where he opined the claimant could not return to work in maintenance for the foreseeable future. Dr. DeTorre expressed his hope that the claimant would be able to perform sedentary work once his carpal tunnel syndrome resolved. Because the claimant subsequently underwent right carpal tunnel release with good results, the medical record supports Dr. DeTorre's opinion that the claimant could perform sedentary level work. Accordingly, the ALJ gave significant weight to

his opinions that the claimant could not return to his past work and can perform sedentary level work. (Exhibit 11F).

* the ALJ considered the September 2010 opinion of Dr. Holman that the claimant could perform only limited weight bearing with his right knee. However, this opinion was rendered less than one month after the claimant's right knee arthroplasty and therefore appears to be only a temporary, post-operative restriction. Because Dr. Holman did not reiterate this restriction in subsequent treatment notes and because the medical evidence reflects improvement of he claimant's right knee mobility, the undersigned has given this temporary restriction little weight. (Exhibit 14F).

* the ALJ considered the October 2010 opinion of Charles Outz, M.D., that the claimant should not drive while taking Ultram secondary to drowsiness, and in January 2012, Dr. Ward noted the claimant could not drive or operate heavy machinery secondary to sedative medication administrated during his hospital visit. (Exhibits 15F and 24F). While the undersigned has not adopted this restriction and therefore gives it little weight, SSR 85-15 indicates that this limitation does not have a significant effect on the occupational base of sedentary work.

* the ALJ considered the November 2010 opinion of Dr. Rittenberg that the claimant has ongoing disability due to his bilateral knee pain and carpal tunnel syndrome. (Exhibit 16F). However, the issue of disability is an issue explicitly reserved for the Commissioner, and Dr. Rittenberg did not set forth any specific functional limitations in support of this assessment. Moreover, upon physical examination of the claimant, he noted the claimant exhibited full range of motion of the bilateral hands, with the ability to perform gross and fine manipulations normally. Accordingly, his opinion that the claimant is incapable of all work activity due to the combination of his bilateral knee pain and carpal tunnel syndrome has been given little weight, as it is not supported by his own findings upon examination or the other evidence of record.

* the ALJ considered the November 2010 opinion of Dr. Ward who stated the claimant could not perform strenuous activity or work for three days secondary to his diagnosis of Coumadin coagulopathy. However, because the claimant's Coumadin coagulopathy subsequently resolved, this temporary restriction has been given little weight. In any event, Dr. Craig's opinion that the claimant could not

perform strenuous activity is not inconsistent with the aforementioned residual functional capacity assessment for a reduced range of sedentary work. (Exhibit 21F/34).

* the ALJ also considered the opinions of the state agency medical consultants and gave their assessments that the claimant can perform a reduced range of light work little weight because the medical record shows the claimant's knee pain is slightly more limiting than they noted. (Exhibits 18F and 23F). However, to the extent that they have opined the claimant is not disabled, those opinions have been given great weight.

### Analysis

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

404.1527(c)(2).  Additionally, SSR 96-2p requires that an ALJ give specific reasons for the

weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well
> supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other
> substantial evidence in the case record means only that the
> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected.  Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in 20 C.F.R. 404.1527 and 416.927. In
> many cases, a treating source's opinion will be entitled to the
> greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an
> individual who has applied for title II or title XVI disability
> benefits is "disabled" or "unable to work," or make similar
> statements of opinions.  In addition, they sometimes offer
> opinions in other work-related terms; for example, about an
> individual's ability to do past relevant work or any other type of
> work.  Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved
> to the Commissioner.  Such opinions on these issues must not
> be disregarded.  However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairment or impairments meets or equals a listing, or the claimant has a

certain residual functional capacity).

**Discussion**

As stated previously, the Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions.  SSR 96–2P, 61 Fed.Reg. 34490, 34492 (July 2, 1996).   Upon review of the ALJ's decision, the Court finds the ALJ properly weighed and explained the weight assigned to the treating and evaluating physicians and the state medical consultant opinions.   Although Plaintiff may point to selective evidence in the medical record that may arguably support the opinions presented, the Court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays*, 907 F.2d at 1456 (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).   Accordingly, the Court finds no basis for remand on this issue.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

July 30, 2014
Greenville, South Carolina